## C. S. GUILKEY *v.* JAS. McMULLEN et al.

**Purchase of Property on Which There is a Mortgage — Deferred Payment to Extinguish Mortgage.**

> Where a vendee purchases property, on which there is a mortgage, and executes his note to the vendor for part of the purchase price, it is his duty to apply the deferred payment to the extinguishment of the mortgage, notwithstanding the vendor has executed to him a bond to hold him harmless against said mortgage; therefore, he is not entitled to consequential damages by reason of the foreclosure of the mortgage.

APPEAL FROM GREENUP CIRCUIT COURT.

April 25, 1867.

OPINION OF THE COURT BY JUDGE WILLIAMS:

Appellee being the owner of the ferry across the Ohio river, at Greenupsburg, sold it to appellant for $4,000 and received real estate to the amount of $3,000 as part payment, the other thousand to be paid in two years from April 30, 1859, for which Guilkey executed his note with interest from date.

At the same time McMullen, with Stark as his surety, executed a covenant to Guilkey to save him harmless against a mortgage to Joshua Oaks, on said ferry, given by McMullen to secure three

several notes of $660.66 each.   McMullen and Stark paid one
of these notes and all but about $202 of another which had been
assigned to Seaton and Means.

When McMullen, having failed to pay one of these and the
remainder on the other, Joshua Oaks brought suit in Sciota
county, Ohio, May 18, 1861, to foreclose the mortgage and sell the
property, to which Guilkey, McMullen, Seaton, and Means, as well
as Johnson, the vendor of McMullen, were made parties, and in
which McMullen set up his note on Guilkey and the mortgage of
the ferry, etc. to secure its payment.

The Ohio court, by its orders, November 18, 1861, caused the
Ohio part of the ferry to be sold to pay these mortgage debts due
by McMullen, and Ephriam H. Oaks became the purchaser
thereof at $934, which the court by another order ascertained
would pay Seaton and Means and also Oaks all but $202.75
and which was so appropriated, and an execution against McMullen awarded as to this remainder in Oaks' behalf.

Subsequent to this Guilkey sold the Kentucky part of the
ferry to E. H. Oaks at $600.

April 7, 1862, Guilkey brought this suit in the Greenup Circuit Court against McMullen and Stark and various others,
among other things asserting a breach of the covenants of McMullen and Stark, in not removing said mortgage of Oaks and the
permitting a sale of the ferry to satisfy it.   April 16, 1862,
McMullen sued Guilkey on said note for $1,000, in the same court.
McMullen and Stark put in separate answers and counterclaims
and cross-suits to Guilkey's suit and all these suits and cross-
suits were consolidated and heard together, the various other
parties also having interpleaded, but no further history is neces-
sary as only the issue between Guilkey and McMullen is here for
revision; therefore, the other numerous parties and the questions
presented by them will not be noticed.

The court adjudged that Guilkey was owing McMullen a suffi-
cient sum due to have extinguished the mortgage to Oaks, and
that he had a right to so appropriate it, and having failed to pay
this sum to Oaks, or to McMullen, he could recover against McMul-
len and Stark only the sum for which his property actually sold,
and extinguish the mortgage, and proceeded then to adjust the
rights of the various litigants, allowing first as offsets the amount

due from Guilkey to Stark, set up by the latter, then a sufficiency of the debt to McMullen by Guilkey, which he had assigned to Johnson to extinguish Guilkey's claim, and then adjusted the rights as between the other parties, all of whom seem to be satisfied but Guilkey, at least none other is complaining.

We see no error in the judgment of the chancellor. It is evident that the debt from Guilkey to McMullen was due and unpaid when Oaks brought his suit to foreclose the mortgage, and which was then ample to have discharged it, and which Guilkey had a right to have so appropriated, which McMullen was seeking rather than evading; therefore, the consequential damages grew out of Guilkey's failure to pay the debt to McMullen; had he paid it, the mortgage would not have been foreclosed, no sale thereunder would have been made, and no sacrifice because thereof would have occurred.

There was no error in refusing consequential damages to Guilkey and we perceive none in the adjustment of the various claims of which he can justly complain; the judgment is, therefore, affirmed.